## No. 2477.

### JOHN BUCHANAN *v.* THE STATE.

1. BURGLARY—CASES APPROVED—INDICTMENT FOR BURGLARY by force, threats and fraud, although it fails to charge that the offense was committed by day or by night, will support a conviction if the proof shows that the entry was effected by actual force in the night time applied to the building. Note the approval of Carr's case, 19 Texas Court of Appeals, 635, and Martin's case, 21 Texas Court of Appeals, 1.

2. SAME—EVIDENCE.—It is not essential that the State, on a trial for burglary, shall prove the non-consent of the owner, occupant or other authorized person to the entry.

3. PRACTICE—BILLS OF EXCEPTION to the exclusion of testimony must disclose the relevancy and materiality of the proposed testimony in order to receive the attention of this court.

4. SAME—CHARGE OF THE COURT.—The occupancy of the owner's agent or clerk during the temporary absence of the owner is, in law, the occupation of the owner. The trial court, therefore, did not err in refusing to charge the jury to acquit if the evidence showed that the house, when entered, was in charge of one P., and not of S., the alleged owner.

APPEAL from the District Court of Kaufman. Tried below before the Hon. Anson Rainey.

The conviction in this case was for the burglary of the store house of Herman Schroeder, and the penalty assessed was a term of two years in the penitentiary.

J. B. Adkins was the first witness for the State. He testified that he knew the defendant at the time he was shot. The wit-

ness then lived about one hundred yards from Peed's Mill, in Kaufman county, Texas. The store and post office at Peed's Mill was kept by Herman Schroeder. The said Schroeder left Kaufman county about five months after the burglary of his said store, and now lives in Illinois. The said burglary was perpetrated in July, 1884. Witness was with Schroeder when he arranged a pistol behind the cash drawer; that pistol was a thirty-eight calibre Smith & Wesson's five shooter. On the Tuesday preceding the Friday on which Schroeder arranged the pistol behind the cash drawer, the witness and the said Schroeder went on a fishing excursion down the Trinity river. Defendant was wounded on the night of the Tuesday that witness and Schroeder started on their excursion. The pistol was arranged to be discharged by an effort to open the cash drawer, and was so arranged by Schroeder to protect the cash drawer. Witness knew that the pistol was loaded with conical ball cartridges, and was left, as arranged, by Schroeder, on the said Tuesday. When witness and Schroeder returned on the following Thursday, they found that the pistol had been discharged, but witness could not say when it was discharged. The store was locked up when the witness and Schroeder started on their fishing excursion. Schroeder and witness were together from the time they started on their excursion until they got back. The store house belonged to Doctor Crawley, but was rented and occupied by Schroeder, who kept a store and the post office in it. George Peed was left in charge of the store house during the absence of Schroeder and witness, and the said Peed received and delivered the mail during that time. Defendant then lived with his father in the Peed's mill neighborhood.

George Peed testified, for the State, that, on the morning in July or August, 1884, after the defendant got shot, he, witness, went into Schroeder's store to attend to the United States mail matters. He found that the southwest door of the store building had been broken open. An overturned coal oil lamp, broken into fragments, lay in the middle of the floor, and the floor around it was saturated with oil. A paper hat box also lay in the middle of the floor. It was the box which was used in arranging the pistol above the cash drawer. A bullet hole passed through the said box, but witness could not discover that the bullet struck the wall any where. Witness did not see the defendant about Schroeder's store at any time during Tuesday, nor did he hear the report of a pistol when it was discharged on

Tuesday night.  Witness was left by Schroeder in charge of the store and post office, during his absence on a fishing excursion. Witness did not miss any money from the cash drawer, nor did he miss any goods from the store.  Schroeder warned the witness about the arrangement of the pistol over the cash drawer. The road forked about two hundred yards south of Schroeder's store.  The fork passing immediately by the store was known as the Porter Bluff and Kaufman road, and the other, which bore off northwesterly, was known as the Scurry road.  Squire Buchanan, the defendant's father, lived about three-quarters of a mile south of the store and below the forks of the road.  On the morning after the store was broken into, Sheriff Wilson came to the store and in company with witness examined it.

Alex. Wilson testified, for the State, that he went to Schroeder's store to investigate the burglary on the morning after it was said to have occurred.  Squire Buchanan was then absent from home.  Witness, however, went to Mr. Buchanan's house where he found the defendant suffering from a serious gun shot wound in the bowels. Witness then went to Schroeder's store with George Peed, and found a Smith & Wesson five shooter arranged as a spring gun over the cash drawer.  One chamber had been recently discharged, and four were still loaded with cartridges.  A ball had passed through a paper box, but witness could not find any other thing or place in the store that it struck.

Doctor H. J. Snow testified, for the State, that he was called to see the defendant on the night that he was shot.  He found the defendant suffering from a pistol or gun shot shot wound in the stomach.  The ball entered the body just below the navel, and passed straight through, lodging under the skin at the back near the spinal column.  When witness left Mr. Buchanan's he went to Mr. Patton's house, thence with Doctor W. H. Snow to the store to meet Plummer Buchanan, his object being to ascertain how defendant got shot.  When they got to the store they met Plummer Buchanan, who either had an old pair of saddle bags, or directed their attention to a pair somewhere in the immediate vicinity.  Witness merely remembered the incident. Witness and Doctor W. H. Snow went by Patton's to find out if Patton had shot defendant.  On the morning after defendant was shot the witness heard of Schroeder's store having been broken open.  When witness left defendant on the morning after he was shot, witness thought defendant would die, and defendant appeared to entertain the same opinion.

Mrs. J. B. Adkins testified, for the State, that, at about nine or ten o'clock on the night that Schroeder's store was broken into, she heard the report of a pistol fired in the direction of Schroeder's store. At the same time she heard what she took to be the falling of a table and the groaning and talking of a man. Shortly afterwards a horse left the vicinity of the store and went off towards Squire Buchanan's house, On the next morning the witness heard of the breaking open of Schroeder's store. Witness had been told about the arrangement of the pistol above the cash drawer in the store. Mr. Broughton and his family lived about two hundred yards from the store, and Mr. Frank Sharp about one hundred yards further. A negro family lived about one hundred and fifty yards from the store. Doctor Crawley lived about one hundred yards from the store. People went to the store every day for their mail. Mr. Schroeder and witness's husband were absent on a fishing excursion at the time the store was broken open.

Alf. Patton testified, for the State, that he remembered the occasion on which Schroeder's store was broken open. Witness did not see the defendant on that day or night. He was then on good terms with the defendant, and never had a quarrel with defendant and did not shoot the defendant. Witness had employed counsel to prosecute in this case.

Mrs. Arnold and Mrs. English testified, for the State, that they were sitting up at the house of the latter, about a half mile from Schroeder's store, on the night of the alleged burglary. At about ten o'clock on that night they heard the report of a pistol fired at or near the store. On the next morning they heard that the defendant was shot during the night, and that Schroeder's store had been broken into.

Robert Hutcherson testified, for the State, that he measured his body with the height of Schroeder's counter at the cash box, and found that the counter struck him about the navel. He thought the defendant was a little taller than himself.

Doctor W. H. Snow, for the State, corroborated the testimony of Doctor H. J. Snow, and in addition stated that he cut the ball from under the skin on the defendant's back. It was a thirty-eight caliber conical cartridge ball.

Frank Sharp testified, for the State, that, early on the morning after the burglary, he, having heard of the burglary of the store and the wounding of the defendant, went to the store to examine the premises. Outside of, and near the door which was broken

open, the witness saw the tracks of a man and a horse. The horse tracks came to the store from the south, and leaving the store went south.

The State closed.

Rufe Day testified, for the defense, that he and Plummer Buchanan, defendant's brother, went to the Schroeder store on the morning after the burglary. They went specially to look for horse and man tracks. They made a close examination of the ground all about the premises, but discovered no such tracks.

The motion for new trial raised the questions discussed in the opinion.

*Marion & Huffmaster* and *J. S. Woods*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. I. It is charged in the indictment that the burglary was committed by means of force, threats and fraud, and that the defendant did "break and enter" the house. The *time*, whether day time or night time, is not alleged. It has been held by this court that such an indictment will support a conviction for either a day time or night time burglary, if the proof shows that the force used in the perpetration of the burglary was applied to the building. (Martin v. The State, 21 Texas Ct. App., 1; Carr v. The State, 19 Texas Ct. App., 635.) In this case the evidence sufficiently establishes that the burglary was committed in the night time, and by means of force applied to the building.

II. Defendant's first bill of exception relates to the admission of testimony which, even if the same was inadmissible, was immaterial, and could not have influenced the verdict of the jury in any manner.

III. It was unnecessary to prove that the house was entered without the consent of the owner or occupant thereof, or of any person authorized to give such consent. (Taylor v. The State, 23 Texas Ct. App., 639; Smith v. The State, 22 Texas Ct. App., 350, and cases therein cited.) It is therefore wholly immaterial that the State was permitted to prove the non-consent to the entry of the person who temporarily had charge of the house.

IV. As to the defendant's third bill of exception, it does not present the question sought to be raised in a manner to enable this court to determine it. Even if the explanation of the de-

fendant as to when, where and how he was wounded was admissible in his behalf, we are not informed what the statements were, and can not, therefore, say that they were material to the defendant. It may be, for aught we know, that said statements were that he received the wound at the time and place of the burglary, and while engaged in its commission. If such were his statements, he certainly could not be heard to complain that they were not received in evidence. A bill of exception taken to the exclusion of testimony must disclose the relevancy and materiality of the proposed testimony. Inferences will not be indulged to supply the omission of such essentials. (Luttrell v. The State, 14 Texas Ct. App., 147; Sutton v. The State, 16 Texas Ct. App., 490; Counts v. The State, 19 Texas Ct. App., 450.)

V. It is alleged in the indictment that the house burglarized was owned and occupied at the time by one Herman Schroeder. It was proved that said Schroeder occupied the house as a store house, and that the post office was also kept in said house. At the time of the burglary Schroeder was temporarily absent from his home and store house on a fishing excursion, and had left the house in charge of one Peed during said absence. Peed seems to have been in charge of the house merely as a clerk or employe of Shroeder, and his possession or occupancy of it was only temporary and subordinate to that of Schroeder, and was, in legal contemplation, the possession and occupancy of Schroeder. (Code Crim. Proc., article 426; Clark v. The State, 23 Texas Ct. App., 612; Littleton v. The State, 20 Texas Ct. App., 168; Frazier v. The State, 18 Texas Ct. App., 434; Bailey v. The State, 18 Texas Ct. App., 426.) It was not error, therefore, to refuse the special charge requested by the defendant to the effect that if the evidence showed that the house entered was in charge of Peed and not of Shroeder at the time it was entered, they would acquit the defendant.

We have found no error in the conviction, and the judgment is affirmed.

*Affirmed.*